## FRANK C. SMITH *vs.* EDWARD D. THAYER.

Worcester.   September 30, 1891. — November 25, 1891.

Present: ALLEN, HOLMES, KNOWLTON, MORTON, & BARKER, JJ.

*Water Rights — Mill Estate — Agreement to convey — Reference to Prior Deed.*

An agreement to convey real estate by the same description used in former deeds will not imply that the parties intend or attempt to agree to include as part of the real estate a right which passed under such deeds, not by force of any special mention or description, but by virtue of its then appertaining to the land, and which both knew had since been so severed and extinguished as to be no longer in existence.

The owner of land with a mill thereon operated by the waters of a brook running through it and by supplemental steam power, after a city during his ownership had duly taken such waters at a point above the land for a water supply, leased it in writing at a rental which was to cease ratably only when there was not water enough for scouring, washing, and steam, and, more than a year after possession was taken under this lease, agreed to sell to the lessee, who knew that the city had then diverted part of the waters, the "mill estate . . . with the mill and other buildings thereon, . . . being the same real estate conveyed said " owner by his grantors, by certain deeds, " to which deeds and their records reference may be had for description, etc.," the premises being referred to as then being held under the lease. *Held,* that the agreement did not call for a conveyance of the estate with the right to the water taken by the city, and was satisfied by the delivery of a deed conveying the estate as it was at the date of the deeds to such owner, save for such taking.

CONTRACT, for the alleged breach of an agreement by the defendant to sell and convey to the plaintiff certain real estate

in the city of Worcester.   Trial in the Superior Court, without a jury, before *Aldrich,* J., who found and ordered judgment for the defendant, and reported the case for the determination of this court.   The case appears in the opinion.

*F. P. Goulding,* (*E. H. Vaughan* with him,) for the plaintiff.

*G. F. Hoar & C. F. Aldrich,* for the defendant.

BARKER, J.   The plaintiff sues upon a contract by which he agreed to buy, and the defendant Thayer to sell, "the Tatnuck Mill estate . . . with the mill and other buildings thereon, . . . being the same real estate conveyed said Thayer by the Leicester National Bank . . . and by Abby K. Foster and al., . . . to which deeds and their records reference may be had for description, etc.   The premises are now under written lease to said Smith from said Thayer, which expires July 31st, 1887, and that lease is not in any way to be affected by this instrument, but said Smith is to hold under it according to its terms until expiration."   The estate was on Tatnuck Brook, by the waters of which, with supplemental steam power, the mill was operated. Thayer acquired his title in the year 1880.   In January, 1883, the city of Worcester, under the St. of 1881, c. 268, took all the waters of the brook at a point one mile above the estate, with a full right to divert the same, and all water flowing into the same, above that point, and to convey it into the city for the purpose of a water supply.   The water-shed above this point was about three thousand four hundred acres, and between it and the mill about sixteen hundred or seventeen hundred acres.   Three small brooks run into Tatnuck Brook between the point of taking and the mill.   The city first diverted the water in 1883.   It has not diverted all the water above the line of taking, but there is nothing to prevent the enlargement of its works and the actual diversion of all the water above that line.   In July, 1885, the defendant leased the estate to the plaintiff at an annual rent of $3,000, which was to cease, *pro rata,* whenever there was not sufficient water for scouring, washing, and steam.   When the contract sued on was made, on September 28, 1886, the plaintiff had been in possession as lessee for more than a year, and knew that the city had taken and diverted the water before his tenancy as stated.   At the same date, the defendant's application for damages for such taking and diversion was pending in

court, and in September, 1889, he was paid in settlement the sum of $25,125, which sum it is agreed that the plaintiff shall recover if entitled to maintain his action. Before bringing suit the plaintiff paid the stipulated price and demanded a conveyance. The defendant delivered a deed conveying the estate as it was at the date of his deeds from the bank and from Foster save for the taking of water by the city, and the plaintiff has retained the deed, protesting that it is not a full performance of the defendant's contract. The price stipulated in the contract of sale was $23,000, and the value of the estate was in dispute at the trial. The presiding justice ruled that the plaintiff could not maintain his action. By the terms of the report, if this ruling was correct, judgment is to be entered for the defendant; otherwise, a new trial is to be granted, with leave for the defendant to apply for a reformation of the contract.

The agreement is to be so construed as to give effect to the intention of the parties, as ascertained from the instrument itself. But so to ascertain that intention the court is bound to take into consideration the circumstances attending the transaction, the situation of the parties, and all the circumstances affecting them and the property at the time, and which are supposed to be equally understood by both parties. *Adams* v. *Frothingham,* 3 Mass. 352. *Simonds* v. *Wellington,* 10 Cush. 313, 316. *Commonwealth* v. *Roxbury,* 9 Gray, 451, 493. *Auburn Congregational Church* v. *Walker,* 124 Mass. 69. When this contract was made the property was a water mill operated by the purchaser as lessee, and both parties knew what change had been made since the seller acquired his title in the right of the estate to have the whole Tatnuck Brook come to the mill. The rent was not to abate when there was no water for power, but only when it was insufficient for steam, washing, and scouring. The estate was known as Thayer's Tatnuck Mill estate, and that designation in the contract must be taken to have well described the property, in its then known actual condition as to water rights. The point of taking by the city being above that at which the brook entered the estate, the property still had the right to all the waters of the brook at its point of entry upon the land. That formerly this right brought waters now diverted, as well as those which now constitute the brook at the

point where it enters the property, did not result from any specific grant or description in the deeds to Thayer, but from the fact that a right to the flow of those waters was then an existing right in the nature of an appurtenance to the land. When the right of the city to divert them was legally established, the Tatnuck Brook remained and brought its waters to this mill. The land remained identical in its parcels, area, boundaries, and in the legal measure of its rights in what at the time was the Tatnuck Brook at the point where it entered the property, and in its adaptation for use in manufacturing, and the changes in its condition and rights were known to both parties. An agreement to convey by the same description used in the former deeds would not imply that they intended or attempted to agree to include as part of the property a right which passed, not by force of any special mention or description, but by virtue of its then appertaining to the land, and which both knew had since been so severed and extinguished as to be no longer in existence. Both parties knew that it was not then within the power of the one to sell, or of the other to purchase, the right to have the city water come to the mill. They did not insert in terms any such impossible provision, and we cannot read it into the agreement apparently for the mere purpose of affording an action for its breach. The very clause which follows the reference to the deeds recites that " the premises are now under written lease to said Smith from said Thayer." But it is plain that the lease did not carry the right to the diverted waters, and that therefore that right was not intended by the parties to be included in the " premises " bargained. The reference " for description, etc.," to the former deeds does not, under these circumstances, require us to disregard the intention apparent upon the whole instrument. *Cutler* v. *Tufts*, 3 Pick. 272. *Allen* v. *Holton*, 20 Pick. 458, 464. *Melvin* v. *Proprietors of Locks & Canals*, 5 Met. 15, 28. *Simonds* v. *Wellington*, 10 Cush. 313. *Parks* v. *Loomis*, 6 Gray, 467. *Doane* v. *Willcutt*, 16 Gray, 368. *Parker* v. *Moore*, 118 Mass. 552. Construed as intended to afford a convenient means of ascertaining the parcels and boundaries of the land and the history of the title, that reference is consistent with the other parts of the instrument, and accords with the plain intention of the parties as gathered from the whole in view of the exist-

ing circumstances.   To regard it as an agreement to convey as part of the property a right which both parties knew had been severed from it, and which it was apparent that the vendor could not convey, would be plainly absurd.   As the deed delivered satisfied the terms of the contract as properly construed, it is unnecessary to consider whether by retaining it the plaintiff would be estopped from contending that it was not a sufficient performance.                    *Judgment for the defendant.*