TOWALIGA FALLS POWER COMPANY *v.* McELROY *et al.*

1. A conveyed to B a narrow strip of land lying on Towaliga river and "also all the water privileges in all the land owned by [the grantor] in Towaliga river, and to hold [the grantee] or his assigns harmless against any damage that might accrue by use of said water privileges." In tak-

ing the conveyance B was acting for the owner of the site for a water-power, about a mile down the river, who contemplated the erection of a dam to utilize this power. B subsequently conveyed to the owner of the site for the water-power the land and water privileges which had been conveyed to him by A. *Held*, that the grant of the water privileges was an easement appurtenant to the use of the land conveyed, whether used separately or in connection with other land of the grantee. In the construction of the nature and extent of the easement, the court will look to the intention of the parties, not only as appearing from the instrument itself, but also from the circumstances surrounding the transaction, the situation of the parties, the condition of the property at the time, and the configuration of the surrounding country.

2. This easement of flowage gives to the owner of the water-power the right to flood the land of subsequent purchasers from the grantor of the easement, with notice of the grant, only to the extent which would be consequential to the erection of a dam of the height in contemplation of the parties at the time of the grant.

3. Under the evidence submitted at the interlocutory hearing, it was proper for the court to preserve the status until the issue of fact was determined by a jury.

Argued January 26,—Decided February 19, 1906.

Injunction. Before Judge Reagan. Monroe superior court. October 10, 1905.

The Towaliga Falls Power Company is a corporation which owns and controls the water-power at High Falls, on the Towaliga river, in Monroe county, and has there constructed its plant for generating electricity by water-power, to be used for lighting towns and cities and supplying motive power to street-car lines and serving the public generally. Under its charter it is given the right to exercise the power of eminent domain in acquiring rights of way or easements over and upon private property, so far as is necessary in carrying out the objects for which it was organized and incorporated. Some seven years since, it commenced the construction of a dam at High Falls, extending across the Towaliga river; and the structure, which has lately been completed, is twenty-five feet in height. A mile or more up the river lie lands which, in 1896, constituted a single tract owned by W. F. Watkins. In November of that year, he made to W. H. Phinazee a deed covering twenty-five acres of this tract, the portion conveyed being a narrow strip lying along and bounded on the south by the Towaliga river, and extending westward to a small tributary known as Watkins' creek, beyond which the tract of land then belonging to him ran for some distance, with an unbroken frontage on the north bank of the river.

In 1898 Watkins conveyed to Mrs. Pearl McElroy another portion of this tract, bounded on the west by the creek and lying north of the twenty-five-acre strip sold to Phinazee, and some 250 yards distant from the river. Her husband, John P. McElroy, is now in possession of another portion of the tract, also north of the strip sold to Phinazee and east of the creek, and some half a mile from the river, which Phinazee has obligated himself, by a bond for titles, to convey to him, and which he now claims under Watkins, as the original owner.

The present proceeding was instituted August 28, 1905, by McElroy and his wife, to enjoin the Towaliga Falls Power Company from backing the water in the river, over and upon the lands above mentioned as having in the year 1896 constituted part of an entire tract belonging to Watkins, but which the plaintiffs assert they subsequently purchased. In their petition they alleged, that the defendant company had "shut down" its dam, and that the water was rising and beginning to run out of Watkins' creek over and upon their premises, and unless the company was enjoined the water would continue to rise, and would eventually cover and ruin the whole of the 75 acres to which they claimed title, the same being bottom-land, but valuable for cultivation. In its answer the defendant averred, that only a small portion of the plaintiffs' lands would be covered with water, and that the plaintiffs purchased the same with full knowledge that the company had previously bought of Watkins the right to back water over and upon these lands, of which he was at the time the owner. In this connection the company asserted that in the year 1896 Seaton Grantland and J. D. Boyd, who were then contemplating utilizing the water-power, procured W. H. Phinazee to purchase the twenty-five acre strip above mentioned, so that it might be covered with water, and also to buy the water privileges in all other lands owned by Watkins along the Towaliga river and secure from him a waiver of any claim for damages arising from the use of such water privileges, it being at the time well understood that these water privileges should embrace the right of backing water on his lands, and that the damages in contemplation were such as might be caused by the back-water incident to the erection of a dam at High Falls to utilize the water-power at that point. The defendant further averred that it had acquired all the rights thus conveyed by Watkins to Phinazee, through suc-

cessive conveyances from him to Boyd and Grantland and from them to it, they being the promoters of the enterprise and having organized the company for the purpose of building a power plant and exercising the water privileges granted by Watkins and others owning land along the river. By way of equitable estoppel, the defendant averred that ever since 1896 it has been known by everybody living in the vicinity of High Falls that the promoters of the enterprise contemplated the organization of a corporation for the purpose for.which the defendant was chartered, that a large plant would be installed at that point, and that a large dam would likely be built; that over seven years ago the work was actually begun, which fact was known to the plaintiffs and all the people in that section, and many thousands of dollars have been expended by the company in the building of a twenty-five-foot dam and in the construction.of its power plant; yet.the plaintiffs have stood by, have made no complaint; nor given any warning of their contemplated suit till the plant is practically complete and the company contemplates the use of the water-power, which is essential to the operation of its plant and can not be utilized without a dam of that height; and that the granting of an injunction would render practically valueless its plant, upon which it has spent about $150,000. The defendant also offered to give bond to satisfy any judgment for damages which the plaintiffs might obtain in the event it should be adjudged that the water privileges set up as matter of ·defense did not cover the lands belonging to the plaintiffs, and they should suffer any special injury by reason of water being backed upon their premises in operating the plant in the manner proposed.·

On the interlocutory hearing the fact was developed that the company's only claim of right to back water upon the lands of. the plaintiffs was based upon a somewhat indefinite grant of water privileges, embraced in the deed from Watkins to Phinazee, in 1896. This deed, after reciting that the grantor conveyed twenty-five acres of land on the north side of Towaliga river, and giving the boundary lines of the premises conveyed, set forth the further fact that the grantor thereby undertook to grant "Also all the water privileges in all the land owned by W. F. Watkins in Towaliga River, and to hold the said W. H. Phinazee, or his assigns, harmless against any damage that might accrue by use of said water privileges." The instrument did not state what use of these "water

privileges" the grantee contemplated, or for what purpose the twenty-five acre strip lying along the river was purchased, or in terms confer upon him the right to back water upon any of the other lands of the grantor. The evidence introduced in behalf of the plaintiffs tended to show that they had notice, at the time they purchased the lands occupied by them, that the promoters of the Power Company contemplated the erection of a power plant at High Falls, a mile or more down the river, but the plaintiffs bought under the impression that the dam to be erected at that point was in no event to be over seven feet high, which was the general understanding in the neighborhood at the time the promoters of the enterprise undertook to secure the necessary water privileges from owners of land along the river; this understanding grew out of express representations to that effect made by their agents at the time water privileges were secured by them, and in at least one instance it was expressly stipulated that the dam should be only five feet in height, and this stipulation was inserted in the grant of water privileges obtained from one of the landowners, Ben Edwards. An affidavit by Watkins, who was the grantor under whom the company claims its water privileges in the lands of the plaintiffs, was also offered in evidence, wherein he deposed: "At the time of this sale to Phinazee it was understood, as stated, that the dam was to be five feet high, and in no event over seven feet high. A dam seven feet high would not flood the McElroy lands, except in big rains. It was never deponent's intention to sell Phinazee any water privileges on any of the lands which belong to the McElroy lands, nor did Phinazee intend or expect to buy any such privileges." Other evidence was submitted to show that a seven-foot dam at High Falls would not flood the plaintiffs' lands, and that it was not until several years after the purchase of water privileges that the promoters began to talk about erecting a twenty-five foot dam. There was no evidence introduced by the defendant company which was in direct denial of the plaintiffs' contention that the agents of the promoters of the corporation represented that the proposed dam would not exceed seven feet in height, and secured the desired water privileges upon that understanding. Phinazee testified, that at the instance of the promoters he approached Watkins in the year 1896, with the view to getting an option on such of his lands as were liable to be over-

flowed by a dam which the promoters contemplated building at High Falls, but that Watkins declined to give the option; that afterwards he submitted a proposition to sell the land wanted by them, and, knowing the object of the purchase, executed the deed dated November 24, 1896; and that the "water privileges as specified therein was fully understood to mean the right to erect dam at the Falls, and land was of no use and of no value without said water privilege." One of the promoters, Grantland, testified that before securing the water privileges from Watkins, they had purchased the water-power at High Falls, and his land was only needed in order to secure the right to flow back-water thereon; and "as to the height of dam, though various heights were discussed and talked about, nothing definite was arrived at or agreed upon until competent civil engineers had made surveys, and upon the report the height of dam was fixed at 25 feet." One of the civil engineers, who was employed by the promoters to develop a plan for utilizing the water-power at High Falls and fixing the height of the dam to be constructed, testified that under his direction a survey was made in the summer of 1902, and that he fixed the height at twenty-five feet, as "no lower dam would be practical or feasible at this point."

On the conclusion of the evidence, and after hearing the argument of counsel, the presiding judge passed the following order: "Upon considering the application for an injunction, it is ordered that the injunction prayed for be and the same is hereby granted, and the defendant, its agents and employees, are enjoined from raising the water on the lands of the plaintiffs beyond the point when the restraining order was granted; this injunction to stand until the defendant institutes proceedings to condemn said land and prosecutes the same to a verdict as provided for in such instances; then this injunction to cease. It is further ordered that said condemnation proceedings are not to affect the questions of their rights to the water privileges claimed by defendant in their answer in said land, but the same may be passed upon in term time upon trial of this case. Said proceedings to condemn shall be ancillary to this proceeding." This order is excepted to by the Power Company, on the grounds, that (1) the evidence did not authorize the granting of an injunction, the defendant showing by deed a grant of the right to back water upon the lands in con-

troversy, of which grant plaintiffs had notice, and they being, moreover, estopped by their conduct from contesting such right; (2) because the defendant had charter power to condemn land on which to flow back-water, and having shown a bona fide claim of right to back water on the plaintiffs' land, and having offered to give bond to protect their interests or deposit in court such a sum of money as was necessary to afford them protection, an injunction should not have been granted; (3) because the court, having acquired jurisdiction of the subject-matter, should have settled the entire controversy by submitting the issues of fact to a jury, instead of requiring the defendant to resort to the statutory proceeding to condemn plaintiffs' lands, thereby estopping itself from setting up its claims of water privileges and its defense of equitable estoppel upon the plaintiffs, as well as causing defendant to suffer damages by being unable to operate its plant pending the litigation; and (4) because the plaintiffs failed to show any joint cause of action against the defendant company, each being the owner of a separate and distinct parcel of land, and there being no joint ownership of the premises which they seek to enjoin the defendant from overflowing.

*Lloyd Cleveland, Cabaniss & Willingham,* and *Y. A. Wright,* for plaintiff in error.    *Robert L. Berner,* contra.

EVANS, J.    (After stating the facts.)    The deed from Watkins to Phinazee conveyed a narrow strip of land lying on the Towaliga river, and "also all the water privileges in all the land owned by W. F. Watkins in Towaliga River," with the stipulation that the grantor was "to hold the said W. H. Phinazee or his assigns harmless against any damage that might accrue by use of said water privileges."    The land and the easement conveyed by this deed by successive conveyances passed to the Towaliga Falls Power Co. Subsequently to the conveyance from Watkins to Phinazee, Watkins sold the remainder of his tract of land north of the Towaliga river and east of Watkins creek to Mrs. McElroy, one of the plaintiffs, and to Phinazee, who afterwards sold it to Mr. McElroy.    The first conveyance by Watkins to Phinazee was duly recorded at the time of the second conveyance, so that the plaintiffs, when they acquired the title, had notice of the easement passing under the first deed, and bought subject to it.    Willoughby *v.* Lawrence, 56 Am. Rep.

758. So that in the determination of the question presented by the record the plaintiffs are entitled to such rights only as W. F. Watkins would have had in the land had he not parted with the title to it.

In determining the nature and extent of an easement created by an express grant, recourse may be had to all of the attendant circumstances at the time of making it, construed in connection with the language of the grant. 10 Am. & Eng. Enc. Law, 411. It is apparent from the instrument itself that it was not the intention of the parties to create merely an easement in gross. This intent is manifest from the stipulation that the grantor was to hold the grantee "or his assigns" harmless against any damage that might accrue by the use of the water privileges granted, and the water privileges were to extend to all the lands owned by the grantor in Towaliga river. While the precise nature of the water privileges is not defined, it is evident that they were to appertain to the use either of the land conveyed by the instrument when used separately, or in connection with other land of the grantee. "The right is appurtenant, and not in gross, when it appears that it was granted for the benefit of the grantee's land." Jones on Easements, §36. The use of the water privileges would be of no practical advantage to the grantee were the deed to be considered as granting an easement in gross; but if the language employed reasonably implies the use of the water privileges in connection with the lands of the grantee, then it may become a substantial and valuable property right appurtenant to the grantee's land. In other words, the deed pertinently suggests that the easement of water privileges is to be appurtenant to a dominant estate owned by the grantee. In the construction of such a grant, the courts will look to the intention of the parties, not only as appearing from the instrument itself, but also from the circumstances of the transaction, the situation of the parties, the condition of the property at the time, and the configuration of the surrounding country. Smith v. Thayer, 155 Mass. 50. All these things are to be supposed as being in the contemplation of the parties at the time, and may be considered in ascertaining the true intent and purpose of the parties to the instrument at the time of its execution. The record discloses that at the time of the conveyance of the narrow strip of land along the river and the grant of the easement, certain promoters had in con-

templation the construction of a dam about one mile down the river at the falls. These promoters attempted to procure from the grantor an option on an easement of flowage rights on his land. The grantor refused to give such an option, but did sell and convey to them the small strip of land, together with an easement of the water privileges on all of his lands in Towaliga river. At the time of this conveyance, the grantor deposed, it was the understanding that a dam was to be erected at the falls with a height of seven feet. It further appears that the promoters obtained from another riparian owner an easement of the water privileges, with a stipulation that the dam was not to exceed five feet in height. One of the promoters admitted that at the time of this conveyance there were several discussions as to the height of the dam, but said that nothing definite was arrived at or agreed upon until competent civil engineers had made surveys, upon whose report the height of the dam was fixed at twenty-five feet; but these surveys were made several years after the execution of the conveyance. Under this evidence the judge could well arrive at the conclusion that the intention of the parties was to grant an easement of flowage on all of the land of the grantor in Towaliga river which would result from the construction of a dam of the height in the contemplation of the parties at the time of the conveyance, and he was authorized to find from the evidence submitted that this height was seven feet.

The plaintiff in error contends that the dam of the Power Company was in process of construction during a long period of time, and that the plaintiffs knew that large sums of money were being expended in its erection, and that the application for injunction was not made until a dam to the height of twenty-five feet had actually been constructed and the water turned in the basin, and that the delay of the plaintiffs, affected with this knowledge, amounted to an estoppel of their right to complain as to the backing of water on their land, consequential upon the construction of a dam of this height. The plaintiffs, on the contrary, while admitting a general knowledge of the construction of a dam at a point upon the river a mile below their land, contend, that, as they were not civil engineers, they had no opportunity or means of knowing that a dam of this height would back water upon their land, and that as soon as the water was turned in the basin and the back water began to invade their lowlands, they immediately ap-

plied to the court to prevent the overflow of their lands. We do not understand that an individual owner of property is estopped because his neighbor or another person a mile distant from him shall erect a valuable improvement, with his knowledge, for the full enjoyment of which improvement it would be necessary to invade his premises. No man has the right, without license or authority, to enter upon another's property solely because such appropriation is necessary to the enjoyment of improvements on his own property, erected with the knowledge of the owner of the premises sought to be invaded. If, in the construction of its grants of water privileges, aided by extrinsic evidence, it shall appear that the Power Company bought the right to back water on the plaintiffs' lands, in such a case the plaintiffs, having bought with notice of the Power Company's rights, could not complain. However, if the extrinsic evidence limited the application of the easement to the erection of a dam of a certain height which would not have the effect of submerging the plaintiffs' lands, the Power Company would have no right to injure the plaintiffs' premises by the construction of a dam of greater height. An estoppel presupposes that the person sought to be estopped has done some act or made some declaration upon the faith of which the party invoking the estoppel has acted to his prejudice or detriment. *Perkins Lumber Co.* v. *Thomas,* 117 *Ga.* 441. The facts of the present case do not involve the doctrine of estoppel.

The terms of the interlocutory order were as favorable to the plaintiff in error as the facts justified. The effect of this order is to preserve the status of the parties until the extent of the easement claimed by the Power Company under the deed from Watkins to Phinazee can be judicially ascertained. The order further stipulated that the Power Company might anticipate this judicial ascertainment of its right to back water, by instituting condemnation proceedings in advance of the trial, and that such condemnation proceedings were not to affect its contention as to its water privileges set up in its answer, but that the proceedings of condemnation should be ancillary to the petition and answer before the court.

The foregoing disposes of all the questions included in the case which were argued in the briefs.

*Judgment affirmed. All the Justices concur, except Beck, J., disqualified.*