## CENTRAL GEORGIA POWER COMPANY *v.* CORNWELL.

1. The grantor owned two tracts of land. She conveyed the fee in one of them and "the water rights and water-power privileges" in the other. The habendum clause was "to have and to hold the said above-granted and described property, with all and singular the rights, members, and appurtenances thereunto appertaining," to the grantee in fee simple. The easement of water rights and water-power privileges passing under the deed was that appurtenant to the property conveyed, and not to other property of the grantee.

2. The evidence examined; and *held*, that it was not erroneous to direct a verdict.

JUNE 15, 1914.

Equitable petition. Before Joseph E. Pottle, judge pro hac vice. Jasper superior court. January 23, 1913.

*Hatcher & Smith* and *Greene F. Johnson,* for plaintiff.

*Dorsey, Brewster, Howell & Heyman* and *W. S. Florence,* for defendant.

EVANS, P. J. The Central Georgia Power Company brought a petition against W. C. Cornwell, alleging, in substance, as follows: Petitioner is a corporation constructing a dam at Capps and Lloyd Shoals on the Ocmulgee river in Jasper and Butts counties. At the dam a power plant is also being constructed to generate electricity by water, to be used for the purpose of lighting towns and cities, and supplying motor power to railroad and street-car lines, and supplying heat, light, and power to the public; and under the laws of this State such corporation is clothed with the power of eminent domain. On June 27, 1903, Mrs. Julia C. McCandless conveyed to Thomas J. Carling, trustee, a certain tract or parcel of land containing 90 and one half acres, known as the Byars place; "also all the water rights and water-power privileges in and to that tract of land containing one hundred and seventy-five acres," known as the Cornwell place; also all the water rights and water-power privileges in all that tract known as the Faulkner place, containing 140 acres; also the water rights and water privileges in all that tract of land known as the Leverett place, containing 103 acres; also all water rights and water privileges in and to that tract of land known as the Smith place, containing 193 acres. This conveyance contained the following clause: "This instrument also conveys, with said property, all the grantor's easements, ways, and rights of way necessary or convenient to the grantee's easy access, ingress and egress

in and to said tract of land and said Ocmulgee river; and also all the grantor's rights and privileges in and to and appurtenant to said river, including the title to the river bed, the islands, the channel, the banks, the margins, shores, lakes, ponds, tributary streams and springs; and also the accretions and alluvium, the water-power, the flow of the stream; and also including the grantor's rights of diversion, overflow, back water and inundation relative to said river; and also including the grantor's rights of fishing, fishery and fishing ground; and also including all the grantor's rights to fords, ferries, landing places, and mill-sites; and also including the grantor's rights to construct dams, obstructions, barriers, embankments, levees, canals, race ways, sluice ways and tail races and conduits; and also including all the grantor's riparian rights, river-bed rights, channel rights, and water rights of every kind and character whatsoever." The habendum clause was to have and to hold "the said above-granted and described property, with all and singular the rights, members, and appurtenances thereunto appertaining, to the only proper use, benefit, and behoof of the said party of the second part, his heirs, executors, administrators, and assigns, in fee simple." By successive conveyances the land and water privileges conveyed by this deed became the property of petitioner. Subsequently to this conveyance Mrs. McCandless sold and conveyed the Cornwell land to the defendant, who accepted and received his conveyance from Mrs. McCandless with notice that she had previously conveyed to petitioner's predecessors in title all the rights, privileges, easements, licenses, and titles set out and contained in her deed to Carling. The dam and power plant of petitioner are approaching completion, and will cause the water of the Ocmulgee river to overflow a portion of the Cornwell tract, and in addition to the land that will be so overflowed, in order to afford petitioner the right of access in and to the reservoir that will be created as a result of the dam, it is necessary and convenient for petitioner's purposes that it have a marginal strip of land adjacent to the storage reservoir, with the right forever to enter upon and use the same in order to maintain the dam and storage reservoir created thereby, which marginal strip will be approximately 30 feet in width. The amount of land of the Cornwell tract which will be overflowed will be 38.61 acres, fully described in a plat attached to the petition. The defendant is now

asserting title to the whole of the 175 acres of land, denying that the petitioner has any right of easement, privilege, interest, or title in and to the same, and threatening to drive off and prevent the entry of persons whom petitioner has employed to enter upon and clear so much of the land as is necessary to be inundated; and he will continue to drive off and prevent any such persons, whenever an effort is made to enter upon and clear the land. Such efforts to drive off petitioner's agents are liable to precipitate a physical conflict, and lead to serious trouble. The prayer is for a decree adjudging the plaintiff to be entitled to the amount and quantity of the land necessary to be overflowed in the operation of the plant, as described in the petition, and to all the interests, easements, rights of way, privileges, appurtenances, and titles in and to the Cornwell tract, as claimed to be necessary and convenient for the construction, maintenance, and operation of the power-plant and the storage reservoir created thereby; and for injunction against the defendant's interfering with petitioner's rights as set out.

The defendant in his answer denied that when he purchased the land from Mrs. McCandless he had any notice of the alleged rights of petitioner, and that the property was conveyed to him with the exception of the water rights and power privileges appertaining to the land; and averred that petitioner had no right so to construct a dam on other land belonging to it as to overflow his land. After the introduction of evidence a verdict for the defendant was directed by the court. A motion for new trial was overruled, and the plaintiff sued out a writ of error.

1. It appeared from the evidence that Mrs. McCandless, at the time of her conveyance to Carling, trustee, owned in fee the Byars and Cornwell places, and certain easements of water rights upon the Leverett, Smith, and Faulkner tracts. Her conveyance passed to the plaintiff the fee in the Byars tract, certain easements upon the Cornwell tract, to which she held title, and certain other water rights and privileges appertaining to other tracts. The material difference between the contending parties is as to the extent of the easement so far as it relates to the Cornwell tract. The power company contends that it owned land two miles down the river, where it was constructing a dam, and that the easement of backing water was not only appurtenant to the land which it purchased, but also to its other land upon the river, and that it had the right to back

water over so much of the Cornwell tract as was necessary to obtain water of the height contemplated at the dam, to carry out its plan of development. On the contrary, the defendant insists that the easement of back water was limited to the land which was conveyed, and had no reference to the grantee's other property, located two miles down the river. If we give the deed the construction contended for by the power company, that is, that the easement of water privileges included the right to submerge the entire Cornwell tract if necessary for the development of other property of the grantee, located two miles away, at its pleasure, in effect that would render the ultimate fee of very little value, on account of this serious burden. The deed is plain and unambiguous. It conveys the "water rights and water-power privileges in and to" the Cornwell tract. That is to say, whatever water-powers and privileges appertain to that tract passed by that conveyance. This is made more certain by a subsequent clause in the deed: that the grantor intended to convey all of her easements in and to that tract of land and the river; her rights and privileges in the river; her rights of back water and inundation relative to the river; her rights of fishery, fords, and ferries; her rights to construct dams and levees; and her riparian rights of every kind whatsoever. There is nothing in the deed to indicate that the easements conveyed therein were appurtenant to other land of the grantee than that to which title was obtained by virtue of the deed, and it would be stretching the grantor's intent beyond what appears in the deed to say that she was conveying easements appurtenant to land not referred to. We are therefore of the opinion that the easements conveyed had reference to the property described in the conveyance, and not to other property of the grantee.

In *Towaliga Falls Power Company* v. *McElroy*, 124 *Ga.* 1014 (53 S. E. 682), the grantor conveyed certain lands in fee, and also the water privileges upon all his land upon a certain stream. The deed was treated by both parties as being ambiguous, and parol evidence was received as to the extent of the easement intended to be conveyed; and it was held that if the parties had in mind the construction of a dam of a certain height on other lands than that embraced in the deed, and the easement was intended to permit this development, the intention of the parties would be given effect. In the case at bar the conveyance evinces the grantor's intention to

convey only such things as are specifically described in the deed, and, in this respect, it differs from the case just referred to.

2. The plaintiff introduced the grantee in the deed from Mrs. McCandless, who testified that the nearest tract of land was about two miles from the dam of the plaintiff, and that the land described in the petition was needed to raise the water something like 40 feet higher than the water in its channel, and that it was necessary to have this land in order to raise the water ten or fifteen miles north of this place to a 520-feet level. This witness in the year 1907 had a conversation with the defendant, during which he told the defendant there was to be a development of the water-power by the dam, and that the power company had a deed to all of the land which would be submerged by the back water from that development; that the defendant asked to have a survey made, showing the lines of his property, which the witness instructed the engineers to make, and he was advised at that time as to the proximate height of the dam and the extent of the development; that he was told that the power company was expecting to make a development something like one hundred feet high; and that the defendant said he had purchased the property and held a bond for title, but did not admit any previous knowledge relative to the power company's proposed development. Mrs. McCandless and her husband testified, that, after the execution of the deed to Carling, Mrs. McCandless sold the Cornwell tract to the defendant, giving him a bond for title; that at the time of the sale the defendant was informed that Mrs. McCandless had sold the water rights and power privileges to the power company; and that in the bond for title Mrs. McCandless reserved the water rights and power privileges which she had previously conveyed, and her deed to the defendant contained the same exception of the water-powers and privileges as that contained in the bond for title. Another witness testified respecting the formal execution of the deed from Mrs. McCandless to the power company. This deed was recorded, but the defendant contended that the attestation was faulty and did not admit it to record. Under the testimony, for the purpose of reviewing the decision made, it becomes immaterial to look into the question as to the proper record of this deed, inasmuch as there was testimony that the defendant had actual knowledge that his grantor had previously conveyed the water-power and privileges to the predecessors in title of the plain-

tiff. Under the evidence the easement of back water was only such as passed to the predecessors in title of plaintiff by virtue of Mrs. McCandless's deed, and was appurtenant only to the property named in the deed. The plaintiff did not have the right to sub- merge so much of the defendant's land as will require a certain depth of water at the dam two miles below. Accordingly, there was no error in directing a verdict for the defendant.

*Judgment affirmed.    All the Justices concur.*

## NOTE.

In several cases hereinbefore reported, where absences of some of the Justices are noted, they were prevented by providential causes from taking part in the judgments rendered in such cases.